WILLIAM V. MUSTO, *ET AL.*, PLAINTIFFS-RESPONDENTS, v. PETER A. LEONE, ACTING CITY CLERK OF THE CITY OF UNION CITY, *ET AL.*, DEFENDANT-APPELLANT.

Argued March 6, 1972—Decided March 20, 1972.

*Mr. Victor P. Mullica* argued the cause for appellant.

Mr. *George J. Kaplan* argued the cause for respondents.

PER CURIAM. This case involves a recall of the five commissioners of the City of Union City. Pursuant to *N. J. S. A.* 40:75-34 each incumbent filed a petition that the recall question be placed upon the ballot. Under the statute, the ensuing election would call (1) for a separate vote as to whether each incumbent should be recalled and (2) for the election of successors for such of the incumbents as may be recalled. The voters thus vote upon successors although at the time of the balloting they cannot know how many incumbents, if any, will be recalled. Pursuant to *N. J. S. A.* 40:75-32 the parties initiating the recalls filed nominating petitions. In each petition one nominee was designated to succeed one named incumbent. The incumbents did not file nominating petitions, they assuming the petitions opposing the recall served also to nominate them to succeed themselves or each other.

Two suits emerged: (1) by the incumbents to strike the nominating petitions of the challengers on the ground that each nominee must run, not to succeed a single incumbent, but rather against all nominees with respect to all incumbents who may be recalled at the election, and (2) a suit by the challengers attacking the ballot as proposed by the Municipal Clerk upon which the incumbents were to be listed as candidates to succeed themselves or each other in the event they are removed by recall.

As to the first suit, the trial court held that under *Grubb v. Wyckoff,* 52 *N. J.* 599 (1968), each nominee must run against the field with respect to all vacancies in the offices of commissioner arising from the recall and hence each petition was defective in seeking to run the candidate for election to the office of one specified incumbent, but the trial court held the probable intent of the signers was to nominate the candidates for all such offices to be filled and hence the petitions sufficed. The Appellate Division affirmed, and we denied a petition for certification.

As to the second suit, the trial court held that since the incumbents had failed to file nominating petitions under *N. J. S. A.* 40:75–32, they could not appear on the ballot as candidates for election if they are removed by the recall. The Appellate Division affirmed, and we granted the petition for certification.

The timetable was demanding. The trial court decided the cases on Monday, February 23, 1972. The Appellate Division heard and decided the appeals on Friday, March 3, 1972. On the afternoon of that day we advised counsel of our action on the petitions for certification already mentioned, and that the appeal would be heard on Monday, March 6, 1972, the day before the scheduled election. Upon the conclusion of the argument we announced our decision orally so that the election could proceed as scheduled. This opinion is filed to record our reasons.

An incumbent is removed by a majority vote. We pointed out in *Grubb, supra,* that the recall statute was obscure with respect to an office to which a nominee may be elected by a mere plurality vote. In such circumstances, if an incumbent could not run to succeed himself, the plurality voters who had elected him at the initial election would be denied an opportunity to choose him even though he could again best the field on a plurality basis.[1] We pointed out in that connection that a recall need not be based upon a "cause" which would disqualify an incumbent from holding office. We noted, too, that if the candidates defeated at the initial election on a plurality basis could by the aggregate support of their several constituencies achieve the elimination of the victor by recall, there might be undue incentive

---

[1] We need not decide whether such a denial would offend the constitutional right to vote. This issue seemingly was raised in *Stone v. Wyckoff*, 102 *N. J. Super.* 26, 36–37 (App. Div. 1968), certif. denied, 52 *N. J.* 254 (1968). It became moot when we held in *Grubb*, which involved the same recall election, that an incumbent could run to succeed himself.

to recall for no reason other than to enable the defeated candidates to seek the office under circumstances made more favorable by the elimination of the strongest man in the original contest. Since the Legislature must be presumed to have intended the ultimate will of the voters to prevail,[2] we concluded the incumbent may be nominated to succeed himself at the recall election so that the voters who wanted him could choose him again if their choice prevailed on the plurality basis.

■■ We held also in *Grubb* that where it was sought to recall more than one incumbent of equivalent offices, the electorate was entitled to have all candidates run against each other for all the vacancies created by the recall, and hence the nominating petition may not be limited to less than all the offices involved in the recall movement. It was for this reason that the challengers' nominating petitions in the present matter were defective on their faces, although we agree with the trial court and the Appellate Division that the probable intent of the signers that their nominees run on that basis was so evident that to strike the petitions would disserve the basic philosophy that the voters be afforded an opportunity for an unfettered expression of their will.

■ For like reasons the petitions filed to contest the recall of the incumbents suffice to nominate them to succeed themselves. The probable intent of the signers was to keep the incumbents in office, either by defeating the recall or by a plurality vote in the contest to succeed them. Hypothetically, a signer of the petition might want his man to be ousted if a majority voted to recall him even though the incumbent would defeat the field by a plurality vote, but

---

[2] *N. J. S. A.* 40:75-26 provides that "The provisions of this article shall be liberally construed, and are not to be taken in derogation of the rights of any person holding the office of commissioner."

the probability is strong the other way.[3] Indeed *Grubb* rested upon that probability in concluding that an incumbent should be permitted to run to succeed himself whenever a candidate may gain office by less than a majority vote. We think it unlikely in the extreme that the signers would have refused to sign a second petition expressly designed to nominate the incumbent to run if he should be recalled. It should be noted in this connection that the statute requires no more signatures to nominate a man than are required to enable the incumbent to contest the recall. The required number for both purposes is 15% of the legal voters. *N. J. S. A.* 40:75–32 and 34. The time for filing of those petitions is also the same, 15 days before the recall election. See the sections just cited.

▪ ■ We can understand the uncertainty in this area as to whether the incumbents who call for the recall elections must simultaneously file a second petition for their nomination. In *Grubb,* we invited legislative attention to the statutes. The Legislature not having acted, we must read the statute to serve the legislative aim that the voters who cast the largest number of the votes for a candidate are entitled to have that candidate serve them in office. To that end we hold that the petitions suffice to nominate the incumbents.

■ At the oral argument, a question was raised as to the format of the ballot. We informed the parties that all the candidates should be listed in a single column. We held also that the ballot should expressly advise the voters to vote for as many candidates as there are offices involved in the recall, which here are five. This direction should appear plainly for since the statute calls for a single election at which the recall issues will be voted upon and the successors

---

[3] We say this notwithstanding the actual votes recorded at such elections. The discrepancy between a "No" vote on the recall question and the vote for the incumbent on the contemporaneous but contingent election on the same recall ballot is readily attributable to the voters' unfamiliarity with the recall process and a failure to realize the right, and the need, to vote twice, in effect, for the same man.

chosen, and the voter cannot know whether there will be a recall or as to how many incumbents, he may well be confused in the absence of such guidance.

The judgment under review was accordingly reversed with the directions noted above. No costs to any party in any court.

Hall, J., concurs and files opinion.

HALL, J. (concurring). Underlying the precise question involved here — whether an incumbent in a commission form of government municipality, who is the subject of a recall election, may contingently run to succeed himself at the same election without having filed a nominating petition prior to the election — is the more basic matter of whether such an incumbent may run to succeed himself at all. As to the latter, this court intimated in *In re Hackensack Recall Election,* 31 *N. J.* 592 (1960), and expressly held in *Grubb v. Wyckoff,* 52 *N. J.* 599 (1968), as well as in the instant case, that he could, at least when recall is sought of more than one incumbent of identical offices with the same expiration date, the incumbent could have been originally elected by a plurality and a plurality vote suffices for election for the unexpired term in the event of recall. I dissented in *Grubb* and concurred only in the result in *Hackensack* because I felt that a recalled incumbent cannot run to succeed himself under any circumstances. I still hold that same view, but I am now bound by the law as determined by the majority in *Grubb.* Since the precise question in the instant case concerns only an application of the determined law on the basic issue, I feel compelled to join in the result reached.[1]

---

[1]Involved here are the particular provisions authorizing recall with respect to the commission form of government (Walsh act), *N. J. S. A.* 40 :75–25 *et seq.* Those provisions contain the odd and onerous requirement that an incumbent, in order to contest the recall and force an election thereon, must file an incumbent's petition signed by at least 15% of the legal voters of the municipality. *N. J. S. A.* 40 :75–34. No such requirement is found in the recall provisions re-

My belief that, under any form of government, a recalled incumbent may not run at the same election to succeed himself or any other incumbent recalled at the same time (which time prevented expressing in the *Grubb* dissent) derives from what I conceive to be a common sense view. That view, based on the fundamental rationale of recall, is that, if a majority of the voters vote for recall, it is irrefutable that they do not desire that incumbent to serve any longer in his office, even though all of those so voting would not agree on who of several nominees should take his place. Such an expression ought to be enough, in all good sense, to preclude the recalled incumbent from sneaking back into office by receiving a plurality of the votes cast for the successor by reason of lack of unanimity among those voting to recall as to who that successor should be as between several nominees.[2]

---

lating to the other two forms of government in which the device is authorized. (Municipalities governed by a Faulkner act form of government, *N. J. S. A.* 40 :69A–168 *et seq.;* municipalities governed by the municipal manager form of government, *N. J. S. A.* 40 :81–6 and 40 :84–12 *et seq.*). *Grubb* involved a Faulkner act form and *Hackensack* the municipal manager form. As to those forms of government, a recall election is mandated simply by the filing of an adequate petition seeking the recall of an incumbent. The court in the instant case, concerned only with the situation under the Walsh act with its requirement of an incumbent's petition to bring about an election, does not deal with how mechanically an incumbent in a Faulkner act or municipal manager municipality, who, if recalled, wishes to run to succeed himself, can assure the placing of his name on the ballot for that purpose. Must he file a nominating petition or is he to be deemed to desire to run to succeed himself and therefore is to be placed automatically on the ballot for that purpose absent some contrary expression?

[2]As a matter of fact in this case, as also in *Hackensack* and as distinct from *Grubb*, there were only five nominees to fill the unexpired terms of the five incumbents sought to be recalled and both the incumbents and the nominees were each bracketed in the successor portion of the ballot. Thus, practically speaking, a majority vote and not a plurality was involved, but the opinion is designed to cover as well situations in which it is not simply a case of five against five and thus a plurality vote would suffice.

I am of the opinion that this basic tenet inferentially underlies the commission form of government statutory provisions governing the form of the ballot, *N. J. S. A.* 40 :75–38, and prescribing the mechanics to be followed when simultaneous recall of more than one commissioner is sought, *N. J. S. A.* 40 :75–37. Section 38 specifically sets forth the form of a recall ballot, requiring, as I read it, the question of the recall of the incumbent — yes or no — to be placed first in a column and the contingent vote for his successor to follow below in the same column by listing the names of the nominees who have filed petitions for that purpose pursuant to *N. J. S. A.* 40 :75–32. The sample form contained in section 38 does not list the name of the incumbent in this lower portion of the column. If the Legislature intended that the incumbent be able to run to succeed himself, it seems to me that the statute would have expressly said so or at least that the sample ballot form would have so indicated. Section 37 provides that, in the event of more than one petition for the recall of a commissioner being filed at or about the same time, the elections shall be consolidated, "but *the recall of each commissioner shall be a separate transaction,* and the ballot shall be arranged by repeating the form provided for in section 40 :75–38 of this title ... in parallel columns for each commissioner sought to be recalled." (emphasis supplied). This, to me, carries forward the same legislative intent where more than one commissioner is sought to be recalled. It also spells out that each such officeholder's fate and the designation of his successor, if he is recalled, is to be determined separately, *i. e.,* that, when there is more than one recall petition involving identical offices, the selection of successors should not be lumped together, with all nominees running against each other. To put it another way, I think the statute contemplates, contrary to the result reached on this point in *Grubb* and here, that, in the case of more than one recall, a proposed successor must select the particular incumbent's post which he seeks. I find the same statutory intent and scheme in the analogous

provisions of the Faulkner act, *N. J. S. A.* 40:69A–172 to
–174, and the municipal manager act, *N. J. S. A.* 40:84–14
to –16.

While I agree that the recall provisions with respect to
all three forms of government are not as precise as they
might be and are in need of legislative clarification, I think
my view not only follows the intent of the Legislature, but
also makes for less confusion in the mind of the average
voter than under the interpretation prescribed by the ma-
jority in *Grubb* and in the instant case. Merely because a
court can think of what it believes to be a fairer method
of conducting the election does not justify a disregard of
the method which the Legislature has provided.[3] The scheme
of combining two elections into one — the first to decide
whether an incumbent should be recalled, and the second, a
hypothetical or contingent one, to select his successor if he
is ousted — is hard enough for the voter to grasp in the
voting booth. It seems infinitely more difficult, if the in-
cumbent is allowed to run to succeed himself, for the voter
to grasp the further fact that, if he favors the retention of
the incumbent, he should vote "No" in one place and then
also vote affirmatively for the incumbent in another.[4] As I

---

[3]The Appellate Division held in *Stone v. Wyckoff*, 102 *N. J. Super.*
26, 36–37 (1968), certif. denied 52 *N. J.* 254 (1968), a case related
to *Grubb*, that there was no constitutional violation because multiple
incumbents sought to be recalled "must persuade at least 50% of the
voters at the election to vote against recall whereas in the same
election successor councilmen can be elected (if the recall carries) by
a mere plurality."

[4]That this confusion is real is shown by what actually happened at
the March 7 election in Union City. While recall was defeated by a
substantial margin, the number of votes for the incumbents in the
successor column was far less than that of the "No" votes on the
question of recall. While that made no practical difference here, it
does indicate to me that a large number of voters would not understand
that, to be sure of retaining incumbents in office in the event a ma-
jority favored recall in a case where there were many nominees to
succeed the incumbents, they should not only vote "No" on recall, but
also vote for the incumbents in the successor column.

see it, the only reason given for permitting the incumbent to run to succeed himself is that, he having originally been elected by a plurality, his defeated opponents in that original election could oust him by combining on a recall vote. The possibility seems so practically remote that I feel the Legislature must be said to have cast it to one side, in the interest of achieving clearer voter expression, by precluding an incumbent from seeking to succeed himself. That prohibition, along with the prescribed form of ballot mentioned above, results in a clearer picture to the voter of what is involved and how he may make his wishes effective.

Mountain, J., concurs in result.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.